The next case we're going to hear is United States v. Weiss and Mr. Weiss, Mr. Weiss or Mr. Weiss, however you want to go, you can handle this case. May it please the court, my name is Charles White, I'm from Greensboro, North Carolina, representing Arthur Weiss, the appellate in this matter. It's good to see your honors. Judge, the first issue before the court is the trial court's enhancement of Mr. Weiss' punishment in this complex financial scheme for occupying a position of trust simply by holding himself out to the public and to the alleged victims in the case, or the victims in the case, as a CPA. The standard review, of course, is clear error for factual findings and the appellant does not dispute the fact that he did hold himself out as a CPA in his business documents, in his email address and things of that nature. The review is de novo, however, for the way the court applied the finding that he held himself out as a CPA and that that constituted a position of trust. The trial court relied heavily on this court's decision in the case of United States v. Brack, and in that case, Judge, there was a bondsman involved. She held herself out as a bondsman to the older victim, in that matter, who hired her in that capacity as a bondsman. She was not, in fact, a bondsman, but that is of no import in the analysis. The bondsman then provided her with personal information, social security numbers, things of that nature, which she then used to defraud him. She robbed him blind, literally. She used his lines of credit and things to that effect. But the relationship between the victim and the defendant was that of client to bondsman. And the court conducted a long analysis, this court conducted an analysis of the requirements of bondsman and the safekeeping, recordkeeping requirements and analogized that to those lawyers and other people of position of trust and held that, yes, she did occupy a position of trust with regard to that victim. Brack also distinguished this court's decision in Kaplinger, which the appellant would submit as much more analogous to this situation. In the United States versus Kaplinger, Kaplinger held himself out as an accomplished physician, falsely again, citing numerous mail order degrees and things of that nature. He used that through agents to induce people to invest in a miracle drug that was reputed to be successful in controlling AIDS and HIV. Of my own personal experience, if I were going to a doctor to give me investment advice, it might be the last person I'd go to. I don't know if that's yours, too. My father's a doctor, Your Honor, so I'm not positive I'd disagree with that. Well, I'm not the criticism of the doctor. I understand. But that's correct. And that was the point in Kaplinger, Judge, that the fact that he held himself out as a physician did give credibility to his assertion at this point. Isn't a person who is told that he's going to, that Mr. Weiss is going to file the tax data, the tax returns, the information, the money to the federal government, that you, the fact that he's a CPA, which would make him more trustworthy in carrying that out than just any person off the street? That's not an illogical assumption, Judge, but there are some distinctions. The fact he did not prepare the tax returns. He didn't do the... No, but the trust would be following through in taking the money, collecting the money, and filing it with the government and filing the necessary information. That's certainly... And they relied on him for that. As a matter of fact, he brought that function into his operation from others in order to have the benefit of the cash flow, of course. Judge, that could make sense, but there was no evidence to that effect in the record. Nobody testified that I hired this particular company because Mr. Weiss is a CPA. No, no, but he did hold himself out as a CPA, and you agreed with that in a brief that he... Yes, he did. So the question is whether holding himself out as a CPA, whether that would create some confidence in the people that he would follow through with his undertaking to take care of these tax matters, which is collecting them, preparing the form, and filing with the federal government. I think that's precisely analogous to the situation in Kaplinger, where his expertise as supposedly a world-renowned physician and research... Except the physician doesn't have anything to do with investments. It did in this case, Judge, because they were investing in a miracle drug that he vouched... He said, this is going to be big, we use it in South America, it's going to be successful, it's going to be a multimillion-dollar corporation, or patent, rather. And the trust reposed in him as a physician by the investors, by assuring them that this investment was going to be successful, was not enough to establish this enhancement under the analysis in Kaplinger. And that's the distinction here, Judge, the fact that he held himself out as a CPA. In fact, there's actually no evidence in the record that anybody even relied on that anybody... Well, there is evidence that they knew he was a CPA, but there's no evidence that anybody was induced to invest in the scheme because he was a CPA. Well, there's no direct evidence that I suppose a finder of fact would make that inference. I don't believe the finder of fact did in this case, Judge. He did, the charge board did say, I can easily conclude that the fact that he held himself out as a CPA enhanced his business credentials to those who were willing to give him business. But he failed to find that the CPA client relationship existed between these victims and Mr. Watts. And that was the requirement that the court imposed. I don't think the court suggested that he had to be a CPA carrying out an accounting function, hired for that purpose. The fact that distinguishes, I think the district court would have said, that distinguishes Kaplinger from this is that the function on which the clients relied, that is preparing the tax matters, collecting the tax money, filing it, and carrying out a function that's very important on a routine basis, is the type of function with which CPAs are experienced and do do. And he just happened to be doing it because that was the nature of his business. And he did it as part of his business offering. It was not a CPA offering, it was a little bit broader. It was an employment operation. But what did the district court say in connection with that finding? That was the statement that appears, I believe, on page 153 of the joint appendix. That is the best indication that I could find of the courts addressing that aspect. I believe that's correct, Your Honor. His analysis starts on the bottom of 152 and goes to 155. I believe that was on 153. I can easily conclude that the fact that he held himself out as a CPA enhanced his business credentials to those who were willing to give business to him. He would be subject to less supervision, et cetera. If he were a CPA, he had met certain standards of the state and so forth. He was able to avoid oversight, both thorough through his continuing education and that he has to receive every year in some 40 or so hours. The fact that he's a member of the profession. The judge, of course, took judicial notice of those facts and appropriately so. But the court in Kaplinger, however, said that that's not enough. The analysis has to be as between... But the doctor in Kaplinger was not an investment advisor. He was not a stockbroker. He was not a banker. He was a doctor. And while people might rely on the fact that the drug was a good drug, I'm not sure they would rely on the fact or could rely on the fact that he was a smart investment advisor and the value of the stock and all that other business that goes with stock decisions. But they did, in fact, rely on his expertise, alleged expertise, as a research professional and his prediction that this drug was going to be successful and spread worldwide. Yet that's not... I understand your point, and I guess what you're really putting up the two-mile post that we have to look at, the Brackman and the doctor, and see where this falls closer to, I gather. Isn't that really where our function is? Precisely, Your Honor. This is exactly right. And again, I would say that the facts in this case are much closer to Kaplinger and the Morris case, the 11th Circuit case cited in Kaplinger as well, where the gentleman held himself as an attorney. That perhaps addresses Your Honor's point that Mr. Weiss was a CPA and doing CPA-type things. In Morris, as Your Honor knows, the attorney actually put money in his trust account, and he was a non-practicing attorney. I'm not sure exactly what that means. But in that case, they did find that that relationship was not enough either, because simply because he says he's an attorney doesn't mean he has that kind of... that he occupies a position of trust with regard to these particular victims. And that's the same case we have here. And I see I'm just about running out of time. Go ahead, yeah. Thank you. And again, Judge, the primary point of this argument is that the requisite relationship did not exist between these investors and Mr. Weiss. Certainly not between the companies who utilized his company's services, and certainly not between BB&T for the bank fraud and himself, or between the IRS and himself. He certainly wasn't their accountant in any way, shape, or form. Thank you, Your Honor. Okay, thank you. Mr. Ellenwood. May it please the Court. Todd Ellenwood from United States of America. Your Honors, the case law says that the central purpose of Section 3B1.3 is to penalize defendants, take advantage of positions that provide them with the freedom to commit a difficult to detect wrong. That is this case. Mr. Weiss took advantage of his position as a purported CPA who managed a professional employee organization to commit the fraud. And his position provided him with the ability to commit a difficult to detect crime. Your Honor, Judge Niemeyer, you already honed in on some of the District Court's findings as to an accountant. But I wanted to layer onto this that this isn't merely an accountant. I think that's all quite relevant. But it's also that he's operating as a professional employee organization. And the District Court made that finding. North Carolina has a statute that's 20 pages long on professional employer organizations, and it is remarkably similar to the act that is the focus of BRAC. So if we look at BRAC, BRAC says we have to look for evidence indicating a fiduciary or personal trust relationship that exists between the victim and the defendant. And in BRAC it says we first examine the legal responsibility that the State of North Carolina imposes. There they said the statutory provisions that govern bail bondsmen make clear that bail bondsmen in North Carolina are subject to a comprehensive system of state regulation. That's true of accountants, and that's true of people operating legally professional employee organizations. I should say here, Mr. Weiss never registered these as PEOs. He was in blatant violation of the law on that matter. But these were PEOs. BRAC case says that bail bondsmen are required to apply for and obtain a license from the North Carolina Commissioner for Insurance. That's the exact same thing with PEOs. They are required to obtain a license from that same entity. There are various qualifications in BRAC that are identical for PEOs. Bail bondsmen must maintain a deposit of securities. A PEO has to have a $100,000 surety bond. In this kind of relationship, there's more trust than in even a normal accounting relationship. The way this scheme worked was that if there is Judge Diaz Enterprises, Judge Niemeyer Enterprises, and Judge Hamilton Enterprises, a normal payroll company, I would be doing it for each of you in your names. The way a PEO works is we pull all of your employees in, now they're under Ellenwood Enterprises, and I am responsible for filing the taxes and getting the workers comp. So the only tax return that's going to be filed is a Form 941, the quarterly tax return, but it's going to say Ellenwood Enterprises. And the reason why that's so important is that if you actually try to double check and contact the IRS and say, I'd like to see confirmation that the employment taxes were paid for Judge Diaz Enterprises, you're not going to get anywhere because there is no filing for Judge Diaz Enterprises. It's under my name. So the IRS is not going to recognize you as somebody who can get access to my information. Where do you get from it being under your name to it being credited to the company involved? Because the employees are all being subsumed under this employee lease relationship, that's what the credit is. The IRS doesn't know, but in some ways the IRS doesn't care because what's going to be included are all the W-2 informations, so the individual employees are all going to be connected up. It's just not going to be in the name of Judge Diaz, it's going to be in the name of Ellenwood Enterprises. But all 10 of your employees, 10 of yours and 10 of yours, there will be 30, they'll be aggregated, and there will be a W-2. So I guess under the law for the IRS it would have to be that the employees were your employees and treated as your employees and were basically being loaned out like Kelly persons to these other firms. That's exactly right, it's an employee leasing operation. Even though they're under the control of these other corporations, it seemed to me that could someday be challenged under the law. I agree with you, Your Honor, it seems like it's right for... But they're treated as employees of Weiss. Yes, and this is what he told clients who actually reached out to him. So they weren't just trusting him, hey, I think my account is doing my payroll taxes, hope he's not stiffing me on the employment taxes. WH Services... Pardon the interruption, but this is all pursuant to the North Carolina Act? No, the North Carolina Act governs PEOs, yes, that is true. The part that I'm talking about, about how the IRS will treat it, that's IRS regulations, and so they interact, but you're right, yes, this is pursuant to North Carolina. WH Services, at first, Weiss directed paychecks, the outside third-party payroll provider, to send the payroll reports to him and only send the paychecks to the company. He explained to the representative of the company that he made the switch because Employer Alternatives, his company, was the company that reported all the employees. TSE Logistics, when a representative called Mr. Weiss and asked him about employment tax returns for various quarters, he said that he filed returns for his employees, that TSE Logistics did not have employees, and that TSE had no filing requirements. This is in the PSR at paragraphs 27 and 32. Another company, Vintage, contacted Mr. Weiss about quarterly employment tax returns. These are people who are used to seeing this every quarter from paychecks, so they're contacting him saying, where's my copy of the 941 that filed? It's not filed under your name, it's filed under my name, it's all good. Weiss assured the rep that he had filed the tax returns and made the tax payments for Vintage workers, along with the workers of his other clients, under his name. One client went even farther. Give me a copy of the 941. And in the record at page 194 and 195, there are handwritten copies of Forms 941. And if you look at it, it doesn't say on the top, these are the employees for the person who was reaching out, it was M. Cohen and Sons. It doesn't say M. Cohen and Sons, it says Blue Ridge Business Services. So he is portraying to this client, there's no separate 941 for every company. Here's the 941 for my company, it's got this very large number on here, over a million dollars, you're embedded in that, I paid the taxes. He sent six check copies along with that. None of those checks actually went through. So even... Are you suggesting that if we agree with you that the focus should be on the duties and obligations and trusts that were acquired as a result of this being the CEO or manager of this professional employment organization, not necessarily his status as a CPA? No, no, no, no, no. I think that I'm just saying this is in addition to it. And I think the district court judge... The district court judge focused on the CPA part for sure. It might have to. I'm not sure just buying services from a company, an independent company, is a position of trust. And I think these two go together. That's what my point is. The district court did focus on the CPA and I don't think that was misplaced. I'm just adding on to this to say this is even more egregious than the typical accountant who says, I'll prepare your payroll and should be sending you 941s. I mean, here I think you are truly trusting that he is going to file the 941s because of his position as a CPA and this setup as a PEO. Even if you want to double check, you can't. If you call the IRS, they're going to say, are you a representative of Blue Ridge Business Services? Do you have a power of attorney? Who are you? You can't get this information. And the district court did have findings on this. On page 151 in the sentencing hearing... I'm not sure. You can keep arguing it. But I'm not sure that every element that you push in that direction doesn't undermine the other direction because the tradition is that to the extent that these people relied on a corporate service that was advertised by the corporation, that unless the corporation is in a trust situation, a situation like taking care of an estate or something like this, it's not a trust situation. The trust situation is created by the professional holding out. Well, he's entered into such a close relationship with him that the employees are purported to be his. Are there cases that suggest that a corporate client relationship, even though close, is a position of trust? No, not your Honor. I don't think there are. And I agree with you that I'm not running from the CPA position.  Well, I'm not saying you're wrong, but I'm suggesting that you're emphasizing an aspect that doesn't seem to help your cause much. Well, there are three factors in looking at the abuse of a position of trust. One factor is the special duties or access to info not available to others. That applies to CPAs. I think that does apply to people who are running PEOs. He has special duties and access to info that others don't. The extent of the defendant's discretion. The district court found that he had the power of free decision or latitude within certain legal bounds here to prepare the tax returns. And whether the defendant's acts indicate that he's more culpable than similarly situated criminal actors, there I think the fact that he was not just a CPA but also operating a PEO, that does go to how much more culpably he is than a similarly situated criminal actor. Because he's not just a CPA doing the returns and not filing it. By layering it through the PEO, to me he's doing something more culpable and makes him eligible for the trust enhancement. I'd like to move on to the second topic, which was the loss calculation and whether it was properly done and included all relevant conduct here. Mr. Weiss's argument is that basically 2B doesn't include income taxes and there's no support for that being in there. I think here the district court correctly included the entirety of the harm caused to the IRS by Mr. Weiss's fraud scheme. It's a little unusual that it's not a pure tax case. This was charged as wire fraud because each transaction, each... I thought there was a tax violation. There is a tax violation in there too. There is. In a tax violation, the loss is determined under 2T. It is under 2T, but we went here under 2B. Well, I understand, but it doesn't mean there wasn't a loss. That's right. That's basically the point, is that the wire fraud and the money laundering puts us in 2B. But because he pled to a charge that included taxes, that brings the whole thing in. The tax charge that he pled to is 7212A, corrupt interference with the internal revenue laws, and it's very broad. It was all of the employment tax conduct and explicitly the personal income tax conduct. In the factual basis, which is the document 22 of the district court record, on page 16 to 18, it includes admissions that false tax returns were filed for 2004, 5, 6, 7, and 8. There was no objection to the calculation of those numbers, just the inclusion. The guidelines clearly contemplate the aggregation of all loss or harm that relates to a common scheme or the same course of conduct. This is not a case of somebody embezzling money and then the government coming along and slapping on a tax charge. The scheme was essentially about taxes. There was workers' comp. There's this insurance fraud. There's all kinds of stuff. But at its core essence, it's a scheme about employment taxes, and that pulls in the personal income taxes too. In fact, arguing that there is no – the appellant says as to the personal tax losses, tax loss is not included in any example or any special rule in 2B. Well, that logic goes too far because that would knock out the employment taxes too, and that's clearly not the case. Nothing in the commentary implies that tax loss should not be part of the actual loss calculation. And once we are in that in 2B and calculating the loss, it should include the entirety of the offense. The offense level should correspond to the aggregated quantity of the full course of conduct. And as I said, defendants claim that unpaid taxes would be part of literally every loss calculation involving routine theft, embezzlement, or fraud. It's nothing other than a red herring. In this case, the IRS is the primary victim of the fraud scheme. The entire loss should be included. Do you have no other further questions? Thank you, Mr. Allen. Mr. White? With regard to the government's argument on the first issue, I believe the court quite accurately picked up on the fact that the trust reposed in Mr. Weiss was really more by virtue of his position as CEO of these corporations rather than by virtue of the fact he held himself out as a CPA. And the scheme that, Judge Neimeyer, that you described, I think it does move much closer to the general fraud aspect. It's important to remember, as I'm sure the court is certainly aware, in any fraudulent scheme there's some degree of trust. The enhancement is for a special relationship between the victim and the defendant, in this case the appellant. And that relationship simply didn't exist in this situation as a CPA. How many levels was the enhancement on? It was a two-level enhancement. Two-level. And what does that change, the range? I don't have the calculation. It would be approximately four years, I believe, potentially, Judge. And so it's a significant difference in Mr. Weiss's guideline range. In the range. He was sentenced in the middle of the range. It was toward the bottom of the range, Judge, about 16% toward the bottom. I believe the bottom of the range was 168. He was sentenced 185 months. And the second part is that a big part of the government's argument was that these organizations were PEOs. Again, a lot of the fact that it's not a CPA but a PEO organization is relevant. But, Judge, the court concluded they were PEOs, but I didn't see any evidence in the record to support that conclusion. Mr. Dunlap made reference to 20 pages of North Carolina statutes. None of that was introduced into evidence. None of that was cited by either side or referred to by the judge. As I pointed out in the third argument, an expert maybe could have testified to the court that these weren't PEOs, but that is not really relevant to the CPA argument. The fact that a PEO, even if it was a PEO, for the sake of argument, was chaired by a CPA, there's no evidence that induced anybody to participate or that it imposed a higher level of trust by that alleged victim in the particular PEO. Mr. Dunlap also, with regard to the second issue, touched upon an issue that is relevant to both issues, and that is that he considered the IRS to be the primary victim of each case. Assuming that, for the sake of argument, which the appellant is certainly not conceding by a long shot, the appellant would put forth that the person who gave this defendant money that is supposed to go to the IRS is the primary victim, not the IRS who never got it. But in either case... Wasn't the IRS a victim? Absolutely, no question. I don't mean to say they were not a victim, but in terms of the primary victim, the person who earned the money gave it to Mr. Weiss and didn't get the results of it. I would submit as the primary victim with regard to the analysis of trust, certainly, and also with regard to the analysis under the inclusion of tax laws. Judge, Mr. Elwood also made reference to the fact that Mr. Weiss had some sort of latitude to prepare and file these returns. That's simply inaccurate. The record is clear that Mr. Weiss did not exercise any discretionary function. He farmed out to third parties, paychecks and parts like that, the calculation of what the appropriate withholdings would have been. He didn't make that calculation. He did misappropriate those funds, there's no question about that, and he's being punished for that. But, Judge, there was not a position of trust or discretion involved in those calculations. Also, with regard to the 941s, again, the one fictitious 941 did show the name of one of Mr. Weiss's corporations on it. However, Judge, I believe in the record, and I can't point to it right now, and I apologize to the court for that, that other 941s were filed with the corporate employer identification numbers. I beg your pardon. With regard to the second issue very briefly, Judge, the grouping rules basically direct the court to select which set of rules and which set of analysis the court is to apply. And once the cases were grouped without objection, that moved to the 2D analysis, which does not include tax losses. And I believe it is accurate to say that if the income, illegally derived income from theft or embezzlement or anything else, would be included in calculating the amount of loss, were that analysis to hold up. That's all I have, I believe, Judge, unless there are any other questions. Thank you, Mr. White. Thank you very much. Do you want to go on to the next case? Do you want to go on to the next case? Oh, yeah. Do you want to go on to the next case? All right. We'll come down in Greek Council, and then we'll go on to the next case.
judges: Paul V. Niemeyer, Albert Diaz, Clyde H. Hamilton